**UNITED STATES of America, Plaintiff-Appellant,**

v.

**William Earl MATTLOCK, Defendant-Appellee.**

**No. 72–1449.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1972.

Decided Feb. 5, 1973.

Certiorari Granted May 29, 1973. See 93 S.Ct. 2734.

John O. Olson, U. S. Atty., Madison, Wis., for plaintiff-appellant.

Donald S. Eisenberg, Madison, Wis., for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, CAMPBELL, Senior District Judge,* and MORGAN, District Judge.*

* Senior District Judge William J. Campbell of the United States District Court for the Northern District of Illinois and Chief Judge Robert D. Morgan of the United States District Court for the Southern District of Illinois are sitting by designation.

ROBERT D. MORGAN, District Judge.

This appeal is prosecuted by the United States to review an order of the court below suppressing certain evidence seized by state officers and FBI agents in three separate warrantless searches of a residence house.

On November 12, 1970, at about 9:30 a. m., sheriff's officers of Columbia County, Wisconsin, arrested defendant, a bank robbery suspect, in the yard of a residence house rented by a Walter Marshall and Elaine Marshall, the arrest being made some distance from the house itself. Residents of the house at the time were Elaine Marshall, Gayle Graff, a daughter of the Marshalls, Graff's infant son, at least two younger Marshall children, and the defendant.

Immediately after the arrest, certain of the officers went to the house and were admitted by Graff. The officers told Graff that they were looking for money and a gun and wished to search the house. Graff consented. The officers seized $4,995 and certain other items from a closet and a dresser drawer in a second floor bedroom, identified in the record as the east bedroom.

The same officers conducted a second search shortly after the first was concluded. Graff again admitted them to the house and consented to a further search.[1] Certain items were then seized from a closet on the first floor of the house. The second search began about 10:15 a. m.

The third search was conducted about 4:30 p. m. of the same day by FBI agents and local officers. Three of the officers were admitted to the house by one of the younger children, where they waited while the fourth officer involved brought Mrs. Marshall from her place of employment to the house. Mrs. Marshall signed a written consent to search. During that search, certain items were seized from a dresser drawer in the east bedroom. Others were seized from locations on the first floor.

Following extensive evidentiary hearings, the court found and concluded that the government had proved that it reasonably appeared to the several officers, just prior to the searches, that facts existed in each instance from which the officers could reasonably believe that both Graff and Mrs. Marshall had authority to consent to a search and that their respective consents would be binding upon the defendant. The evidence related to Graff's apparent authority to consent was that she and defendant, among others, resided in the house; that she admitted the officers while dressed in night clothes and a robe; that she then told the officers that she and defendant both occupied the east bedroom, and that women's clothing therein contained was hers; and that she had told the officers that she used the two upper drawers of a dresser in the room and the defendant used the two lower drawers.

The appearance of Mrs. Marshall's authority was found in the fact that she and her husband were the lessees of the whole premises from a third party owner. Though finding apparent authority to consent, the trial judge expressed his incredulity of the fact that none of the officers had asked Mrs. Marshall about the arrangement under which defendant occupied the east bedroom.

The judge expressed a reservation as to search of the bottom two dresser drawers, since there was no testimony as to whether Graff's statement that defendant, only, used those drawers was made before or after the search, saying that if the information was known prior to the search, there was no apparent authority to bind defendant by Graff's consent.

From Mrs. Marshall's testimony, the court found that a rental agreement had existed between defendant and Mrs.

---

1. The court did not consider the question whether Graff's consents were voluntary, in light of the fact that she was never advised that she had the right to refuse consent.

Marshall, pursuant to which he paid her $25.00 per week for the use of the east bedroom and board. The court found and concluded that prior to the several searches, facts did not exist which would render the consent of either Graff or Mrs. Marshall to a search of the east bedroom binding upon the defendant.

In that regard, the court refused to consider the hearsay evidence that Graff had stated to the searching officers that she occupied the east bedroom with the defendant, and that certain clothing there located was hers, as substantive evidence that the room was jointly occupier by her and the defendant.[2]

The court ordered that all evidence seized from the east bedroom be suppressed. Defendant's motion to suppress evidence seized from other areas of the house was denied on the ground that defendant had no standing to object to a search of any part of the house except the east bedroom.

The government's principal contention against the suppression order is that appearance of authority to consent satisfies Fourth Amendment requirements, and that the court erred in requiring proof of facts showing actual authority to consent. Thus, the government argues that an imposter, having no connection with a residence searched, would bind a putative defendant if it reasonably appeared to the searching officer that the imposter had the right to consent to a search. Statement of the argument is largely its own refutation. Furthermore, the government bases its position to a great extent upon United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). *Rabinowitz* can only be viewed as shaky authority, since the broad rationale of that case was quite generally overruled in Chimel v. California, 395 U.S. 752, 768, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

■ Security in one's home from unreasonable searches and seizures is a personal right, *e. g.*, Stoner v. California, 376 U.S. 483, 489, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Anderson v. United States, 399 F.2d 753, 755 (10 Cir., 1968), not to be eroded "by unrealistic doctrines of 'apparent authority.'" Stoner v. California, *supra*, at 488, 84 S.Ct. at 892.

■ One of joint occupants of a residence may consent to a search of the premises jointly occupied and by his consent bind the nonconsenting occupant to face the evidence seized. *E. g.*, United States v. Stone, 471 F.2d 170, 7 Cir. 1972; United States v. Airdo, 380 F.2d 103 (C.A.7 1967), cert. denied, 389 U.S. 913, 88 S.Ct. 238, 19 L.Ed.2d 260. The government relies wholly on such cases. United States v. Wixom, 441 F.2d 623 (C.A.7 1971); United States v. Botsch, 364 F.2d 542 (C.A.2 1966), cert. denied, 386 U.S. 937, 87 S.Ct. 959, 17 L.Ed.2d 810 and Drummond v. United States, 350 F.2d 983 (C.A.8 1965), cert. denied, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542, all involving consent by one of partners in crime to search premises to which all had equal access; United States v. Airdo, *supra*, involved admitted joint occupancy; Burge v. United States, 342 F.2d 408 (C.A.9 1965), cert. denied, 382 U.S. 829, 86 S.Ct. 63, 15 L. Ed.2d 72, joint occupants of a bathroom searched; Weaver v. Lane, 382 F.2d 251 (C.A.7 1967), cert. denied, 392 U.S. 930, 88 S.Ct. 2289, 20 L.Ed.2d 1390, consent by hostess to search room of temporary visitor; Gurleski v. United States, 405 F.2d 253 (C.A.5 1968), involved joint use and possession of automobile. It is equally clear that a landlord cannot by his consent waive a tenant's right to be free from an unreasonable search. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). Nor can a person having no right of occupancy of premises bind another by his consent to a search of the premises. Stoner v. California, *supra*.

2. That hearsay evidence was admitted and considered for its bearing upon the question of the reasonableness of appearance to the officers of Graff's authority to bind defendant by her consent.

A comparison of the many cases reveals that a vicarious consent is sustained only when actual authority to consent is shown to have existed when consent was given. In our view, Judge Doyle has simply articulated the correct principle which courts until now have applied without clear articulation thereof. He correctly held that defendant's constitutional rights could be waived only if it was proved that reasonable appearance of authority to consent existed and, also, that just prior to the search, facts existed showing actual authority to consent. We cannot reject his finding that the government failed to prove that actual authority did exist. Such actual authority is, of course, to be distinguished from actual permission to consent, which need not be proved.

The court below correctly placed the burden upon the government to prove that defendant's Fourth Amendment rights were waived. *E. g.*, Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Chimel v. California, 395 U.S. 752, 761, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). The government appears before the court asserting misplaced reliance upon inapposite cases dealing with either the challenged validity of a search warrant or the issue of standing to move to suppress seized evidence. *E. g.*, Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960), and Brandon v. United States, 106 U.S.App.D.C. 118, 270 F.2d 311, 312–313 (1959), cert. denied, 362 U.S. 943, 80 S.Ct. 808, 4 L.Ed.2d 771 (issue was standing to pursue motion to suppress); United States v. Rellie, 39 F.Supp. 21 (E.D.N.Y.1941) (challenged legality of a warrant).

The government also challenges the court's statement that the authority of the consenter to bind a putative defendant must be proved "to a reasonable certainty, by the greater weight of the credible evidence" as applying an erroneous standard of proof. The sustaining of the contention that a constitutional right has been waived invokes a high standard of proof of facts showing waiver. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States v. Coleman, 322 F.Supp. 550, 553 (E.D.Pa.1971); United States v. Cole, 325 F.Supp. 763, 768 (S. D.N.Y.1971). The district court's statement of the standard of proof required to prove the fact of authority to bind defendant is consistent with the principle enunciated in those cases and is not subject to abstract criticism.

Finally, the government contends that the court erroneously excluded extra judicial statements and other hearsay evidence as bearing upon the issue of the existence of actual authority to bind the defendant by Graff's consent. Thus, the court excluded Graff's hearsay statements to officers that she occupied the east bedroom with defendant and testimony that both defendant and Graff had stated publicly several times that they were married. The evidence was properly excluded pursuant to the well established rule that hearsay is not admissible as substantive evidence to prove the existence of a fact in issue. Bridges v. Wixon, 326 U.S. 135, 153–154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); 29 Am.Jur.2d, Evidence, §§ 493, 495. The hearing below cannot be equated with that on a petition for a search warrant, as the government contends. An unreasonable, warrantless search is not insulated against constitutional objection by the fact that probable cause did in fact exist. Vale v. Louisiana, *supra,* 390 U. S. at 34, 90 S.Ct. 1969; Chimel v. California, *supra,* 395 U.S. at 762, 89 S.Ct. 2034. A search warrant should have been obtained in this case.

The record supports the findings that a rental agreement did exist between defendant and Mrs. Marshall, and that there was no proof of facts showing actual authority in either Graff or Mrs. Marshall to consent to a search of the east bedroom.

The court below did not direct what disposition was to be made of the cash and other evidence suppressed. It should do so. The judgment will be affirmed and the cause remanded to the court below for that determination and such further proceedings as may be required.

Affirmed and remanded.