# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3316

_____

United States of America,         *

                               *

         Appellee,         *

                               *   Appeal from the United States

      v.                *   District Court for the

                               *   Western District of Missouri.

Roy J. Hudspeth,         *

                               *

         Appellant.       *

_____

Submitted: April 11, 2007
Filed: March 11, 2008

_____

Before LOKEN, Chief Judge, WOLLMAN, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER, BENTON, and SHEPHERD, Circuit Judges, en banc.

_____

RILEY, Circuit Judge.

Roy Hudspeth (Hudspeth) entered a conditional guilty plea to possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5) and (b)(2). The district court[1] sentenced Hudspeth to 60 months' imprisonment. On appeal, Hudspeth challenged the denial of his motion to suppress evidence seized during the warrant search of his business and the warrantless search of his home computer. Hudspeth

---

[1]The Honorable Dean Whipple, then Chief Judge, United States District Court for the Western District of Missouri.

also challenged the district court's application of the United States Sentencing Guidelines. A panel of our court unanimously affirmed the denial of Hudspeth's motion to suppress the evidence seized during the warrant search of Hudspeth's business computer, and also affirmed Hudspeth's sentence. United States v. Hudspeth, 459 F.3d 922 (8th Cir. 2006). A majority of the panel, however, reversed the district court's denial of Hudspeth's motion to suppress the evidence seized during the warrantless search of Hudspeth's home computer by applying Georgia v. Randolph, 547 U.S. 103 (2006), and concluding Hudspeth's objection to the search overruled his wife's later consent. We granted the government's petition for rehearing en banc, vacated the panel opinion, and heard additional argument. We now reinstate the panel opinion, except the portion regarding the warrantless search of Hudspeth's home computer, and affirm the district court in all respects.

## I.    BACKGROUND

The factual background of this case is set forth in detail in the panel opinion, Hudspeth, 459 F.3d at 924-26, thus we repeat only those facts necessary for discussion of the issue before our en banc court. On July 25, 2002, drug enforcement officers executed a search warrant at Handi-Rak Services, Inc. (Handi-Rak) seeking evidence relating to large quantity sales of pseudoephedrine tablets. Hudspeth, Handi-Rak's CEO, arrived at the business while the search was underway. Hudspeth received his Miranda[2] warnings and agreed to talk with Missouri State Trooper Corporal Daniel Nash (Cpl. Nash). During the course of the search, officers discovered child pornography on Hudspeth's business computer and homemade compact discs (CDs). Hudspeth told Cpl. Nash he downloaded the images from the internet and burned the images onto CDs. Hudspeth was arrested for possession of child pornography. The child pornography discovered on Hudspeth's business computer and the CDs, along with information volunteered by Hudspeth, led Cpl. Nash to believe Hudspeth's home

_____

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

computer also probably contained child pornography. Cpl. Nash asked Hudspeth for permission to search his home computer. Hudspeth refused.

After officers arrested Hudspeth and transported him to jail, Cpl. Nash and three other law enforcement officers went to Hudspeth's home. Hudspeth's wife, Georgia Hudspeth (Mrs. Hudspeth), and the couple's two children were at the residence. Mrs. Hudspeth sent the children to a back bedroom and permitted the officers to enter the living room. The officers were not in uniform and were not carrying their service revolvers. Cpl. Nash identified himself and informed Mrs. Hudspeth her husband had been arrested for possession of contraband found on his business computer. Cpl. Nash told Mrs. Hudspeth he was concerned the home computer contained similar contraband.

Cpl. Nash and Mrs. Hudspeth discussed the family's two computers: one in the children's room, which only the children used, and one in the garage (home computer). Cpl. Nash asked Mrs. Hudspeth for permission to search the home. Mrs. Hudspeth refused. Cpl. Nash then asked Mrs. Hudspeth if he could take the home computer. Mrs. Hudspeth said she did not know what to do and asked Cpl. Nash what would happen if she refused to let him take the home computer. Cpl. Nash explained he would apply for a search warrant and, in the meantime, he would leave an armed, uniformed officer in the home to prevent the destruction of the home computer and other evidence. Cpl. Nash did not tell Mrs. Hudspeth her husband previously denied consent to search the home computer.

Mrs. Hudspeth told Cpl. Nash she wanted to make a phone call and went into the kitchen where she tried unsuccessfully to contact her attorney. A few minutes later, Mrs. Hudspeth returned to the living room and gave the officers permission to take the home computer. Cpl. Nash also seized homemade CDs found next to the home computer, which bore the same markings as CDs seized at Handi-Rak.

Cpl. Nash obtained a second search warrant to search the contents of the computers and CDs taken from Handi-Rak and the Hudspeth residence. On the CDs and the computer hard drives, investigators found child pornography, which Hudspeth had downloaded from the internet and on-line newsgroups. Investigators also discovered movie files of Hudspeth's stepdaughter appearing nude and in various stages of undress, which Hudspeth had surreptitiously recorded using a web camera.

Hudspeth was indicted for possession of child pornography and unsuccessfully moved to suppress the evidence seized during the searches of Handi-Rak and the home computer. Hudspeth entered a conditional guilty plea to possession of child pornography, reserving the right to appeal the denial of his motion to suppress. At sentencing, the district court sentenced Hudspeth to 60 months' imprisonment, the statutory maximum under 18 U.S.C. § 2252A.[3] Hudspeth appealed the district court's denial of the suppression motion and the application of sentencing enhancements.

After the appellate panel heard oral argument but before the panel filed its opinion, the Supreme Court decided Randolph. The panel requested additional briefing on the application, if any, of Randolph to the warrantless search of Hudspeth's home computer. Thereafter, the panel unanimously affirmed the district court's denial of Hudspeth's motion to suppress the warrant search of Hudspeth's business computer concluding the warrant, as well as Hudspeth's express consent, authorized the search of Hudspeth's business computer. The panel also unanimously affirmed Hudspeth's sentence, concluding under the terms of Hudspeth's plea agreement, Hudspeth waived the right to appeal any sentence not exceeding the statutory maximum. Regarding the warrantless search of Hudspeth's home computer, the panel unanimously agreed Mrs. Hudspeth's consent was voluntary and not coerced, but the panel divided over the application of Randolph. The majority held

---

[3]The 2003 amendments to 18 U.S.C. § 2252A(b), increased the maximum and minimum sentences for offenses under § 2252A(a).

Mrs. Hudspeth's consent did not overrule Hudspeth's non-contemporaneous objection to the search. We granted the government's petition for rehearing en banc on the issue of the applicability of Randolph to the warrantless seizure of Hudspeth's home computer.

## II.    DISCUSSION

When considering a district court's denial of a suppression motion, we review for clear error the district court's factual findings and de novo its legal conclusions based on those facts. United States v. Salazar, 454 F.3d 843, 846 (8th Cir. 2006). Our en banc court now addresses only whether Hudspeth's objection to the warrantless search of the home computer overruled Mrs. Hudspeth's later consent. We must view this question not only in light of Randolph, but also in light of two earlier Supreme Court decisions: United States v. Matlock, 415 U.S. 164 (1974); and Illinois v. Rodriguez, 497 U.S. 177 (1990).

In Matlock, defendant William Matlock (Matlock) had been arrested in the front yard of his residence on suspicion of bank robbery. See United States v. Matlock, 476 F.2d 1083, 1085 (7th Cir. 1973), rev'd, 415 U.S. 164 (1974). Looking for money and a gun used in connection with the robbery, the arresting officers immediately went to the door of the residence and secured consent to search the home from Gayle Graff (Graff). The officers did not ask Matlock for consent even though he sat in a squad car a short distance away. Matlock, 415 U.S. at 166. The officers seized cash and a gun from the east bedroom of the home, which Matlock shared with Graff. The trial court suppressed the evidence recovered from the bedroom, concluding Graff's consent to search the bedroom was not binding on Matlock. Matlock, 476 F.2d at 1086. The suppression was affirmed on appeal. Id. at 1088.

The Supreme Court reversed, holding the government could satisfy its burden of proving consent to a warrantless search by showing "permission to search was obtained from a third party [Graff] who possessed common authority over . . . the

premises" to be searched. Matlock, 415 U.S. at 171. Citing earlier Fourth Amendment law, the Court clarified that proof of voluntary consent to justify a warrantless search "is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Id. (footnote omitted) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 245-46 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 487-90 (1971); and Frazier v. Cupp, 394 U.S. 731, 740 (1969)). The Court stated "the consent of one who possesses common authority over premises or effects is valid as against the *absent, nonconsenting* person with whom that authority is shared." Id. at 170 (emphasis added). Graff's consent was valid despite the fact the arresting officers knew Matlock was sitting in the squad car a short distance away and the officers did not ask Matlock for his consent. Id. at 166, 171, 178.

In Rodriguez, the issue of co-tenant consent arose out of a domestic dispute. Rodriguez, 497 U.S. at 179-80. Police were summoned on behalf of assault victim Gail Fischer (Fischer). When police arrived, Fischer told the officers her assailant was asleep in "our" apartment. Fischer then led the officers to the apartment, unlocked the door with her key, and gave the officers permission to enter. Once inside the apartment, the officers observed drugs and drug paraphernalia in plain view and found Rodriguez asleep in the bedroom. Rodriguez was arrested and charged with possession of illegal drugs. He moved to suppress the evidence claiming Fischer had moved out of the apartment several weeks earlier and did not have authority to consent to the search. The Illinois state court suppressed the evidence, holding Fischer's consent was invalid because Fischer "was not a 'usual resident' but rather an 'infrequent visitor' at the apartment," who "did not possess common authority over the premises." Id. at 180. The decision was affirmed on appeal. Id.

The Supreme Court reversed, concluding a police officer's reasonable belief that a person with common authority over the premises consented to the search is

enough to satisfy the reasonableness requirement under the Fourth Amendment.  Id. at 186.  In arriving at this decision, the Court distinguished between "those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment," and noted that nothing "in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures."  Id. at 183 (quoting Schneckloth, 412 U.S. at 241).

The Court further noted the Fourth Amendment does not assure a defendant "no government search of his house will occur unless he consents," id., rather the Fourth Amendment guarantees only "no such search will occur that is 'unreasonable,'" id. (citing U.S. Const. amend. IV).  The Court emphasized "[t]he fundamental objective that alone validates all unconsented government searches is, of course, the seizure of persons who have committed or are about to commit crimes, or of evidence related to crimes," id. at 184, and reiterated that "of the many factual determinations that must regularly be made by agents of the government," the Fourth Amendment does not require the agents "always be correct, but that they always be reasonable," id. at 185-86 (citing Brinegar v. United States, 338 U.S. 160, 173 (1949) (distinguishing the "large difference" between what "is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search")).  The Court found "no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search."  Id. at 186.

Most recently, in Randolph, the Court considered "whether one occupant may give law enforcement effective consent to search shared premises, as against a co-tenant who is present and states a refusal to permit the search."  Randolph, 547 U.S. at 108.  In Randolph, the defendant's wife, Janet Randolph (Mrs. Randolph), informed the police her husband, Scott Randolph (Randolph), took their young son away and was a drug user with drugs in the home.  Id. at 106-07.  After Randolph returned to the home and explained the child was with a neighbor, the officers asked Randolph

for permission to search the home. Randolph refused. The officers immediately turned to Mrs. Randolph and asked for her consent. Mrs. Randolph readily consented and led one officer to a bedroom where the officer observed drugs and drug paraphernalia. Id. at 107.

After being charged with cocaine possession, Randolph moved to suppress the evidence seized during the search. The state trial court denied the motion to suppress; however, that ruling was reversed on appeal. Id. at 108 (citing Randolph v. State, 590 S.E.2d 834, 836-37 (Ga. Ct. App. 2003), aff'd, Randolph v. State, 604 S.E.2d 835, 836 (Ga. 2004)).

The Supreme Court granted certiorari and affirmed the appellate decision, which distinguished Matlock, observing "Randolph was not 'absent' from the colloquy on which the police relied for consent to make the search." Randolph, 547 U.S. at 108 (citing Randolph, 604 S.E.2d at 837). The Court, quoting the Georgia Supreme Court, stated "the consent to conduct a warrantless search of a residence given by one occupant is not valid in the face of the refusal of another occupant who is physically present at the scene to permit a warrantless search." Id. (quoting State v. Randolph, 604 S.E.2d at 836).

The Supreme Court further noted that no prior co-tenant consent-to-search cases "presented the further fact of a second occupant physically present and refusing permission to search, and later moving to suppress evidence so obtained." Id. at 109. Throughout the Randolph opinion, the majority consistently repeated it was Randolph's *physical presence* and *immediate objection* to Mrs. Randolph's consent that distinguished Randolph from prior case law.[4] The Court reinforced this point in

---

[4]For example, in discussing customary expectations of courtesy, the Court stated "it is fair to say that a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter *when a fellow tenant stood there saying, 'stay out.'"* Randolph, 547 U.S. at 113

its conclusion, holding " a warrantless search of a shared dwelling for evidence over the *express refusal of consent by a physically present resident* cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Id. at 120 (emphasis added).

The Court went on to emphasize the significance and preservation of both Matlock and Rodriguez, and thus the consequentially narrow holding of Randolph:

> Although the Matlock defendant was not present with the opportunity to object, he was in a squad car not far away; the Rodriguez defendant was actually asleep in the apartment, and the police might have roused him with a knock on the door before they entered with only the consent of an apparent co-tenant. If those cases are not to be undercut by today's holding, we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

Id. at 121.

Thus, as we turn to the question of whether Hudspeth's Fourth Amendment rights were violated, we must consider not only Randolph, but Matlock and Rodriguez as well. Several factors demonstrate Hudspeth's Fourth Amendment rights were not violated.

---

(emphasis added). The Court added that a co-tenant inviting a third party into the shared dwelling "has no recognized authority in law or social practice to prevail over a *present and objecting* co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." Id. at 114 (emphasis added).

As an initial matter, we note that when Mrs. Hudspeth consented to the seizure of the home computer, Hudspeth already had been arrested and jailed for possession of child pornography. His arrest was based on child pornography previously seized during the warrant search of Handi-Rak. Indeed, this independently discovered evidence, combined with information volunteered by Hudspeth, provided probable cause for Cpl. Nash to believe the home computer contained additional contraband. Furthermore, during the search at Handi-Rak, Cpl. Nash observed Hudspeth making several phone calls. This observation provided Cpl. Nash with a reasonable concern that any evidence on the home computer was at risk because it was possible Hudspeth made phone calls to arrange for the removal or destruction of the home computer. Such exigent circumstances support the reasonableness of the officer's conduct. United States v. Amburn, 412 F.3d 909, 915 (8th Cir. 2005).

The legal issue of whether an officer's knowledge of the prior express refusal by one co-tenant negates the later obtained consent of another authorized co-tenant is a matter of first impression in this court. We will answer this compound legal question by answering the separate legal questions involved.

First, we know Mrs. Hudspeth was a co-tenant authorized to give the officers consent to search. See Matlock, 415 U.S. at 171. We also know that although not obligated to do so, Cpl. Nash advised Mrs. Hudspeth of her right to refuse consent. See Schneckloth, 412 U.S. at 248-49. In fact, Mrs. Hudspeth did refuse Cpl. Nash's request to search the home. Cpl. Nash correctly informed Mrs. Hudspeth of his lawful authority and his alternative intent to leave an armed, uniformed officer at the residence to secure the evidence if Mrs. Hudspeth refused to consent to Cpl. Nash seizing the home computer. See Segura v. United States, 468 U.S. 796, 810 (1984) ("We hold, therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents."); United States v. Ruiz-Estrada, 312 F.3d 398, 404 (8th Cir. 2002).

-10-

Second, unlike Randolph, the officers in the present case were not confronted with a "social custom" dilemma, where two physically present co-tenants have contemporaneous competing interests and one consents to a search, while the other objects. Instead, when Cpl. Nash asked for Mrs. Hudspeth's consent, Hudspeth was not present because he had been lawfully arrested and jailed based on evidence obtained wholly apart from the evidence sought on the home computer. Thus, this rationale for the narrow holding of Randolph, which repeatedly referenced the defendant's physical presence *and* immediate objection, is inapplicable here.

Third, the Fourth Amendment's reasonableness requirement did not demand that the officers inform Mrs. Hudspeth of her husband's refusal. This conclusion is supported by Matlock and Rodriguez, where law enforcement officers bypassed the defendants against whom the evidence was sought, although the defendants were present and available to participate in the consent colloquy. The officers instead sought the consent of an authorized co-tenant. See Rodriguez, 497 U.S. at 180; Matlock, 415 U.S. at 166.

The Randolph opinion repeatedly referred to an "express refusal of consent by a *physically present* resident." Randolph, 547 U.S. at 120 (emphasis added); e.g., id. at 108, 109, 114, 121-23. The Randolph majority candidly admitted "we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact *at the door and objects*, the co-tenant's permission does not suffice for a reasonable search." Id. at 121 (emphasis added). Hudspeth was not at the door and objecting and does not fall within Randolph's "fine line." Thus, we must conclude Cpl. Nash's failure to advise Mrs. Hudspeth of her husband's earlier objection to a search of the home computer did not convert an otherwise reasonable search into an unreasonable one.

The Fourth Amendment does not prohibit warrantless searches and seizures, nor does the Fourth Amendment always prohibit warrantless searches and seizures when the defendant previously objected to the search and seizure. "What [Hudspeth] is

-11-

assured by the Fourth Amendment itself, however, is . . . no such search will occur that is 'unreasonable.'" <u>Rodriguez</u>, 497 U.S. at 183. As the Supreme Court explains, "it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his [or her] own right." <u>Matlock</u>, 415 U.S. at 171 n.7. And the absent, expressly objecting co-inhabitant has "assumed the risk" that another co-inhabitant "might permit the common area to be searched." <u>Id.</u> The authorized co-tenant may give consent for several reasons including an unawareness of contraband on the premises, or a desire to protect oneself or others (as here, Mrs. Hudspeth, in the self-interest of herself and her children, consented to the seizure of the home computer to prevent the placement of an armed, uniformed law enforcement officer in her home to guard the evidence while a search warrant was obtained).

Under the totality of circumstances of the present case, maintaining the Fourth Amendment's touchstone requirement against unreasonable searches and seizures, we conclude the seizure of Hudspeth's home computer was reasonable and the Fourth Amendment was not violated when the officers sought Mrs. Hudspeth's consent despite having received Hudspeth's previous refusal. We affirm the district court's denial of Hudspeth's motion to suppress the evidence obtained from the warrantless seizure of Hudspeth's home computer.

## III. CONCLUSION

For the reasons stated, we reinstate Parts I, II(A)(1), and II(B) of the panel opinion in full, and that portion of Part II(A)(2) regarding the voluntariness of Mrs. Hudspeth's consent. The judgment of the district court is affirmed in all respects.

MELLOY, Circuit Judge, with whom WOLLMAN and BYE, Circuit Judges, join, dissenting.

I believe Mrs. Hudspeth's consent cannot overrule Hudspeth's denial of consent. Therefore, I respectfully dissent.

-12-

The question presented to the en banc court is whether an officer who was denied consent to search a shared residence by one co-tenant may rely upon consent given by a different co-tenant as grounds for a warrantless search of the shared residence. Although the majority notes that "exigent circumstances support the reasonableness of the officer's conduct," ante at 10, whether exigent circumstances justified entry into the Hudspeth home without a warrant is not a question before the court. Nor do we have before us other alternative theories, such as inevitable discovery, that may provide a basis for the admission of evidence discovered on the home computer.[5] We are faced with a single issue: the ability of a co-tenant to consent to a search of shared premises when a co-tenant of equal status objects to the search. My conclusion that such a search is unreasonable, and therefore is a violation of the Fourth Amendment, stems from the same Supreme Court jurisprudence discussed at length by the majority.

Notably, none of Supreme Court's relevant co-tenant consent jurisprudence presented a factual scenario identical to that presented in the instant case. The differences between the cases are plain. I believe these differences to be very significant. In Matlock and Rodriguez, the co-tenant challenging the admission of the evidence against him never voiced an objection to the warrantless search. Matlock, 415 U.S. at 166; Rodriguez, 497 U.S. at 180. Randolph, of course, objected to the warrantless search of his home, Randolph, 547 U.S. at 107, as did Hudspeth. Randolph objected while standing at the threshold of the shared residence, id., whereas Hudspeth's objection occurred off-site. The question is whether these differences are of constitutional import. The majority glosses over the difference

_____

[5]The panel opinion remanded the case to allow the government to attempt to show alternate grounds, other than consent, would support admission of the evidence. As the majority notes, Randolph was decided after initial briefing in this case. The panel majority indicated that because the factual predicate for any alternative theory of admissibility had not been developed in the district court, the government and defense should have the opportunity to present evidence related to any such theory.

-13-

between lack of consent and express objection, and instead focuses on geography, concluding that the location of a defendant, not whether he expressly objects, is determinative. Mindful that the Supreme Court "decide[s] the case before [it], not a different one," id. at 120 n.8, I reach a contrary conclusion. Based on the principles discussed in these cases, I conclude a warrantless search conducted despite the timely express objection of a co-tenant of equal status cannot be considered reasonable, regardless of where the objection occurs.

Turning first to Matlock, the Court there held: "'the consent of one who possesses common authority over premises or effects is valid against the *absent, nonconsenting* person with whom that authority is shared.'" Ante at 6 (quoting Matlock, 415 U.S. at 170). The majority relies upon this statement in concluding that a co-tenant who expressly objects but is absent may nonetheless be subject to a warrantless search based upon the consent of another co-tenant. This analysis is flawed because "nonconsenting" cannot be read as synonymous with "objecting." First, the definition of the word "nonconsenting" belies that interpretation. The use of the prefix "non" usually "impl[ies] mere negation or absence of something (rather than the opposite or reverse of it . . .)." Webster's Unabridged Dictionary 1306 (2d ed. 2001). Further, the term "nonconsent" is defined as "[l]ack of voluntary agreement." Black's Law Dictionary 1078 (8th ed. 2004). Thus, "nonconsenting" would imply absence of consent, not objection. Second, none of the cases cited as consistent with the Matlock Court's holding involved co-tenants who expressly objected to a search; all of the individuals seeking to suppress the evidence simply were silent or did not have the opportunity to consent or object to the search. See Matlock, 415 U.S. at 169–70 nn.4–6 (collecting cases). Third, in differentiating between Matlock and Randolph, the Supreme Court highlighted the *lack of objection*, not the *lack of consent* by the defendant. See Randolph, 547 U.S. at 120–21. Neither Matlock nor Randolph consented to the search of his shared residence, but Randolph explicitly objected—a outcome-determinative fact. The majority asks more of Matlock's holding than it can give; Matlock provides no guidance as to the

-14-

reasonableness of a search conducted despite explicit objection by a co-tenant of equal status.

The majority also looks to language in Rodriguez dealing with lack of consent in support of its conclusion that explicit objection by a co-tenant may be overcome. The majority highlights the Rodriguez Court's statement that the Constitution does not guarantee that "'no government search of [a person's] house will occur unless he consents'" only that "'no such search will occur that is unreasonable.'" Ante at 7 (quoting Rodriguez, 497 U.S. at 183) (internal quotation omitted). This proposition is unremarkable and adds little, if any, support to the majority's conclusion. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness," Samson v. California, 547 U.S. 843, 855 n.4 (2006), and "[t]here are various elements, of course, that can make a search of a person's house 'reasonable,'" Rodriguez, 497 U.S. at 183–84. For example, a search conducted without a person's consent, but pursuant to a warrant issued by a neutral and detached magistrate upon a finding of probable cause, is reasonable. The question presented in this case is not whether a search can ever be conducted without the consent of the defendant, but whether a warrantless search of shared premises can be reasonable when based upon contested consent.

In contrast to the passages from Matlock and Rodriguez emphasized by the majority, the language of the Randolph Court demonstrates the significance of express objection by a co-tenant, as opposed to mere lack of consent. Throughout the opinion, the Court repeatedly refers to "objecting" co-tenants, not "nonconsenting" co-tenants. See, e.g., Randolph, 547 U.S. at 114, 115, 117 n.6, 121, & 122. In fact, the holding assumes there will be nonconsenting co-tenants—co-tenants who do not affirmatively assent to the search—and that those co-tenants will "lose[] out." Id. at 121. By carefully "drawing a fine line," between the defendants in Rodriguez, Matlock, and Randolph, the Randolph Court highlighted the importance of express objection by a

-15-

co-tenant. Id. This is evident in the Court's conclusion that "there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according *dispositive weight to the fellow occupant's contrary indication when he expresses it.*" Id. at 121–22 (emphasis added). The Ninth Circuit recently emphasized the importance of express objection by a co-tenant, relying upon Randolph and holding "that when a co-tenant objects to a search and another party with common authority subsequently gives consent to that search in the absence of the first co-tenant the search is invalid as to the objecting co-tenant." United States v. Murphy, No. 06-30582, 2008 WL 441837, at *5 (9th Cir. Feb. 20, 2008).

The majority treats the Court's repeated reference to physical presence as creating a necessary prerequisite for a finding that a search based upon contested consent is unreasonable. I do not believe the Supreme Court's language reflects a geographic mandate, but rather a conscious effort to "decide the case before [it], not a different one." Id. at 120 n.8. In this case, we are required to decide the issue the Supreme Court left unanswered: Is the express denial of consent by a co-tenant dispositive or is the physical location, i.e., at the front door, controlling? In my view, the Randolph Court's primary focus was on legitimate expectations of privacy. See United States v. Cos, 498 F.3d 1115, 1126 (10th Cir. 2007) (discussing Randolph and concluding that "whether the defendant's reasonable expectation of privacy was infringed by the third party's consent to the search is a paramount concern"). Relying upon Minnesota v. Olson, 495 U.S. 91 (1990), the Court found the legitimate expectation of privacy of the objecting co-tenant is at least as strong, or stronger, than an objecting overnight houseguest. Randolph, 547 U.S. at 113.

It seems inconceivable to me that a core value of the Fourth Amendment, the expectation of privacy in one's own home, would be dependent upon a tape measure. The objecting co-tenant in Randolph was at the front door. At what point does that co-tenant lose his or her right to object to the search? At the front porch? In the front

yard? At the curb? I cannot believe the Supreme Court intended to make one's expectation of privacy dependent upon the happenstance of location.

The Supreme Court's discussion of the implications of a ruling contrary to the holding in Randolph also demonstrates the search in the instant case was unreasonable. In explaining its holding, the Court stated:

> For the very reason that Rodriguez held it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent, we think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a *potentially objecting co-tenant before acting on the permission they had already received*. . . . The pragmatic decision to accept the simplicity of this line is, moreover, supported by the substantial number of instances in which suspects who are asked for permission to search actually consent, albeit imprudently, a fact that undercuts any argument that the police should try to locate a suspected inhabitant because his denial of consent would be a foregone conclusion.

Randolph, 547 U.S. at 122. Here, officers were not responding to an "ostensibly legitimate opportunit[y] in the field." Id. They were attempting to create an opportunity despite actual knowledge that the target of their investigation had already foreclosed the option of a consent search. The Court's concern about the need for a dragnet to find "potential objectors" is non-existent because Hudspeth had already expressed his objection; his "denial of consent" was "a foregone conclusion." Id.

"[N]othing in social custom or its reflection in private law argues for placing a higher value on delving into private premises to search for evidence in the face of disputed consent, than on requiring clear justification before the government searches private living quarters over a resident's objection." Randolph, 547 U.S. at 120. I

-17-

believe that the Supreme Court has made it clear that the government must get a warrant when one co-tenant expressly denies consent to search a shared residence. In this case, that would not have been a significant burden. As the majority explained, the information gathered at the Handi-Rak "provided probable cause for Cpl. Nash to believe the home computer contained additional contraband." Ante at 10.

Thus, I conclude the warrantless search conducted based upon Mrs. Hudspeth's consent was unreasonable as to Hudspeth. At the time Cpl. Nash sought Mrs. Hudspeth's consent, Hudspeth had already explicitly denied consent to search his home. His opposition to a warrantless search of his home was unequivocal. The subsequent consent of Mrs. Hudspeth could not overcome that express denial of consent. I respectfully dissent.

_____