[Cite as *State v. Rodriguez*, 2020-Ohio-3242.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO.  2019-L-125** |
| - vs - | : | |
| RANDY V. RODRIGUEZ, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2019 CR 000420.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Karen A. Sheppert,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH  44077 (For Plaintiff-Appellee).

*Jason L. Fairchild,* Andrews & Pontius LLC, 4810 State Road, P.O. Box 10, Ashtabula, OH  44005 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, Randy V. Rodriguez, appeals the judgment of the Lake County Court of Common Pleas.  After accepting appellant's guilty plea to one count of kidnapping, one count of felonious assault, and one count of tampering with evidence, the trial court sentenced him to an indefinite term of imprisonment of 14 to 18 years. Appellant challenges his counsel's effectiveness as well as the trial court's sentence. We affirm.

{¶2} On the evening of April 20, 2019, appellant and his girlfriend, L.C. ("the victim"), left a party in Cuyahoga County. While en route home to Wickliffe Ohio, in Lake County, and without any ostensible warning, appellant indicated he was going to kill the victim. Appellant began to strike the victim in the face and choked her to the point of losing consciousness. When she regained consciousness, he repeated the beating. Although the victim attempted to exit the vehicle, appellant would not allow her.

{¶3} Upon arriving at their residence, appellant dragged the victim into the garage and continued the assault; the victim again lost consciousness, at which point, appellant poured gasoline on her and threatened to burn her alive.

{¶4} After apparently regaining his composure, appellant visited a neighbor, Dana Silvestro, and advised her that the victim was next door and "f'd up." Ms. Silvestro went next door and observed the victim badly beaten and laying on the garage floor. The victim vomited blood and Ms. Silvestro noticed a strong smell of gasoline. When the victim regained consciousness, she told Ms. Silvestro that appellant was trying to kill her. Both women returned to Ms. Silvestro's home where she called 911.

{¶5} Officers from the Wickliffe Police Department responded and found appellant in the garage. There was no indication he had been involved in the altercation, i.e., his clothing was clean, showing no signs of blood or stains. He advised them he was the victim's fiancé and explained that the victim became intoxicated at a party, threatened suicide by pills, and poured gasoline on herself. At this point, appellant stated he went to the neighbor for help.

2

{¶6} Officers explained that they needed to check the home for other potentially injured persons. Appellant declined to consent and advised the officers to obtain a warrant. Appellant was subsequently detained and taken to the Wickliffe Police Department.

{¶7} Meanwhile, the victim had been taken to the hospital for treatment. While there, officers obtained written consent to search both her vehicle and the couple's residence, which she owned. In the home, officers noticed blood stains on an area rug in the garage. The victim advised officers appellant was wearing blue jeans, a dark gray button-down shirt to the party they attended, and K-Swiss tennis shoes (clothing he was not wearing when police arrived). Inside a bedroom closet, officers observed K-Swiss tennis shoes with apparent blood on them. And, in the basement laundry, they found a load in the washer that included, among other things, a dark gray button-down shirt, blue jeans, and key to the victim's Jeep Wrangler.

{¶8} After being assessed, the victim was transported to Metro Health Center in Cleveland due to brain bleeds. After further assessment, officers learned the victim suffered from two nasal fractures, three chips to her teeth, two subdural hematomas, a concussion, a torn carotid artery, as well as multiple contusions to her face, neck, torso, back, and arms.

{¶9} Appellant was indicted by the Lake County grand jury on nine counts, including four counts of kidnapping, felonies of the first degree; two counts of felonious assault, felonies of the second degree; tampering with evidence, a felony of the third degree; possessing criminal tools, a felony of the fifth degree, and domestic violence, a misdemeanor of the first degree. Appellant pleaded not guilty, but eventually withdrew

3

the plea, entering a guilty plea to one count of kidnapping, in violation of R.C. 2905.01(B)(2); one count of felonious assault, in violation of R.C. 2903.11(A)(1); and a lesser-included offense of attempted tampering with evidence, in violation of R.C. 2923.02 and R.C. 2921.12(A)(1). After conducting a sentencing hearing, the trial court sentenced appellant to serve eight years imprisonment for kidnapping; six years imprisonment for felonious assault; and 12 months imprisonment of the lesser-included offense of tampering with evidence. The kidnapping and felonious assault counts were ordered to run consecutively with one another, and the remaining count was ordered to run concurrent with those sentences, for an indefinite term of 14-18 years. Appellant was ordered to pay restitution and was placed on the violent offender database. This appeal follows.

{¶10} Appellant's first and second assignments of error are related. They provide:

{¶11} "[1.] The trial court erred when it accepted appellant's guilty plea because appellant received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights and as a result appellant's guilty plea was not made knowingly, voluntarily, and/or intelligently.

{¶12} "[2.] The trial court erred and appellant received ineffective assistance of counsel when the convictions of kidnapping and felonious assault were not merged for purposes of sentencing."

{¶13} Under his first assignment of error, appellant asserts his trial counsel was ineffective for failing to challenge the search of his residence with a motion to suppress.

4

{¶14} To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Ziefle*, 11th Dist. Ashtabula No. 2007-A-0019, 2007-Ohio-5621, ¶20. As such, appellant must show that counsel's performance was deficient and must additionally show prejudice resulting from the deficient performance. *State v. Jackson*, 11th Dist. Ashtabula No. 2002-A-0027, 2004-Ohio-2442, ¶9.

{¶15} "'Failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "'When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there was a reasonable probability the result of [the proceeding] would have differed if the motion had been filed or pursued.'" *State v. Weimer*, 11th Dist. Lake No. 2013-L-008, 2013-Ohio-5651, ¶38, quoting *State v. Walker*, 11th Dist. Lake No. 2009-L-155, 2010-Ohio-4695, ¶15.

{¶16} Generally, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). It is a fundamental Fourth Amendment principle, however, that neither a search warrant nor probable cause is required if valid consent to search, an exception to the constitutional requirements, is given. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219 (1973). Consent to search is valid by someone other than a defendant where the third-party granting consent possessed common authority over the premises sought to be searched. *United States v. Matlock*, 415 U.S. 164, 171 (1974).

5

{¶17} With the foregoing in mind, "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Georgia v. Randolph*, 547 U.S. 103, 120 (2006). In *Randolph*, the defendant's estranged wife had given police consent to search the marital home for items of drug use. The defendant, who was present at the home, refused to give police consent. In concluding the consent of the estranged wife could not override the objection of the defendant, the United States Supreme Court recognized two "complementary rules," "one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." *Id.* at 121-122. The latter rule is fundamentally premised upon the objecting occupant's express objection as well as his physical presence. *Id.* at 120.

{¶18} Later, in *Fernandez v. California*, 571 U.S. 292 (2014), the consent of a joint occupant of a residence was deemed valid, despite the objection of a defendant, who had been arrested and removed from the home before subsequent consent was obtained. In *Fernandez*, police knocked on an apartment door when they heard screams from the residence. The door was answered by a woman who appeared battered and bloody. The defendant came to the door and objected to the officer's entry. Suspecting the defendant had assaulted the woman, the officer placed him under arrest and removed him. An officer later returned to the apartment and obtained oral and written consent to search the same. In declining to give *Randolph*, *supra*, an overly expansive interpretation, the Court upheld the search, holding a lawful occupant of a

home has the right to invite police to enter the dwelling to conduct a search, despite the absent co-occupant's previous objection. *Fernandez, supra*, at 307.

{¶19} In this matter, appellant objected to the search, but was subsequently arrested and taken to the police department. The co-occupant of the home, the victim, subsequently provided consent to officers from the hospital to search the residence. This fact pattern is similar to the facts in *Fernandez* and thus, we conclude the victim's consent and the officers' subsequent search were valid.

{¶20} We recognize that, in *Fernandez*, consent was obtained by a co-occupant who was in the residence when consent was given. We do not think this factual distinction affects the legal analysis, however. That is, in *Randoph, supra*, the majority consistently repeated it was *the defendant's* physical presence and immediate objection to his wife's consent that distinguished it from prior case law. The Court reinforced this point in its conclusion, holding "a warrantless search of a shared dwelling for evidence over the *express refusal of consent by a physically present resident* cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120. (emphasis added). The crucial point, therefore, is the presence or absence of the objector, not the consenting co-occupant; simply because the victim was in the hospital when she gave consent should not invalidate that consent. To conclude otherwise would allow a coincidental formality (the co-occupant's physical presence in the residence) to vitiate consent that is otherwise valid and voluntary. In effect, an absent, expressly-objecting co-occupant has "assumed the risk" that another co-occupant "might permit the common area to be searched." *Matlock, supra*, at fn. 7.

**{¶21}** Notwithstanding the foregoing, appellant relies upon *United States v. Hudsputh*, 459 F.3d 922 (8th Cir.2006) ("*Hudsputh I*") in support of his argument that counsel should have filed a motion to suppress. In that case, the defendant objected to the search of his home computer while officers were searching his place of business, pursuant to a valid warrant. Subsequently, police obtained consent from the defendant's wife to conduct the search. The Eighth Circuit invalidated the search; later, however, on rehearing en banc, the court upheld the search relying principally upon the authority of *Fernandez*, *supra*. *See United States v. Hudsputh*, 518 F.3d 954 (8th Cir.2008). Appellant requests this court to adopt the reasoning of *Hudsputh I* which would, in his apparent view, demonstrate that counsel had a reasonable probability of success on the hypothetical motion to suppress. We decline to accept this invitation.

**{¶22}** Our role in evaluating counsel's performance is, in light of controlling authority, to assess whether counsel's performance was deficient because, given the evidence, there was a reasonable probability of success. To adopt the defunct ruling in *Hudsputh I* would be advisory (because we are not addressing the merits of the denial of an actual motion to suppress) and would transcend the narrow scope of our review. Here, there is evidence of valid consent by a co-occupant after appellant, over objection, was removed from the residence. *Randolph* and *Fernandez* are controlling authority from the United States Supreme Court, regardless of any potential argument counsel could have made vis-à-vis *Hudputh I* in a hypothetical motion to suppress. And, as discussed above, the facts of the instant case, when viewed in relation to the holdings in *Randolph* and *Fernandez*, demonstrate no reasonable probability of

succeeding on a motion to suppress. We therefore hold counsel's performance was not deficient for failing to file such a motion.

{¶23} Appellant also argues counsel should have filed a motion to suppress due to an alleged invalid protective sweep of his residence. He asserts that, at no point, did the officers at the scene have any reason to believe others were inside the home, let alone that other potential occupants who were in danger or posed a danger to the officers. Thus, he maintains the officers lacked "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the * * * scene." *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶14.

{¶24} Even assuming the officers had no reasonable basis for conducting the protective sweep, no evidence was removed as a result of the sweep. Only after the victim gave valid consent to search the residence did officers obtain evidence relating to the incident. Where nothing was seized, there would be no basis to file a motion to suppress based upon an unreasonable seizure, even if the search is arguably problematic.

{¶25} Next, appellant contends counsel was ineffective for failing to argue that the kidnapping and felonious assault counts should be merged. We do not agree.

{¶26} R.C. 2941.25 reflects the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 11. R.C. 2941.25 provides:

> {¶27} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment * * * may contain counts for all such offenses, but the defendant may be convicted of only one.

9

{¶28} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment * * * may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶29} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Ohio Supreme Court held:

{¶30} Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *Ruff*, *supra*, at paragraph three of the syllabus.

{¶31} At sentencing, the issue of merger was raised by the trial court at which point defense counsel conceded that the kidnapping and felonious assault offenses did not merge. The following exchange occurred on record:

{¶32} THE COURT: As far as merger, do you believe that any of the three counts that your client plead to merge?

{¶33} [DEFENSE COUNSEL]: Not in this case, your honor. As we discussed with [the prosecutor] and the state at length, there were essentially two separate incidents and the way the state had crafted its offer, it was one count from one incident, one count from another incident. So it's our opinion - - it's our belief that this is - - there is no merger.

{¶34} While the trial court did not further inquire into why the counts would not merge, the prosecutor, at the change-of-plea hearing, set forth the following factual basis for the plea:

{¶35} Had this case gone to trial the evidence would have shown that on April 20, 2019 initiating in Cuyahoga County and continuing into Lake County, specifically in Wickliffe, Lake County, Ohio the defendant and the victim * * * were in a vehicle that they got into in Cuyahoga County and drove to Lake County, Ohio. While in the

10

vehicle the defendant continuously struck [the victim] in the face and head, [and] strangled her to the point of her losing consciousness. When she would come to and regain consciousness, he would repeat that. He prevented her from getting out of the car on at least one occasion.

{¶36} After dragging [the victim] into the garage of her residence once they arrived, he continued to assault her in this manner to the point of her losing consciousness. He then poured gasoline on her threatening to burn her alive. As a result of the assault [the victim] suffered a broken nose, two subdural hematomas, a concussion, a torn carotid artery in her neck, and various contusions and bruises on her face, head, neck, torso, back and arms.

{¶37} Appellant pleaded guilty to Count 3, kidnapping and Count 4, felonious assault. The kidnapping count alleged appellant, by force, threat, or deception, knowingly, under circumstances creating a substantial risk of serious physical harm to the victim, restrained her liberty. The felonious assault count alleged appellant knowingly caused serious physical harm to the victim. Given the factual basis, one could reasonably infer that appellant committed two separate kidnappings and at least two felonious assaults. The victim was, under circumstances creating substantial risk of serious physical harm, knowingly, by force, restrained by appellant both in the vehicle and when she was dragged from the vehicle. Further, both in the vehicle and in the garage, appellant knowingly caused serious physical harm to the victim. In light of defense counsel's representation at sentencing, that the kidnapping and felonious assault counts were from separate incidents, as well as the prosecutor's factual basis demonstrating that at least one kidnapping and one felonious assault occurred separately, each with a separate animus, we conclude defense counsel's performance was not deficient for failing or declining to seek merger.

{¶38} Appellant's first and second assignments of error lack merit.

11

{¶39} Appellant's third assignment of error states:

{¶40} "The trial court erred when it imposed a consecutive sentence on appellant because a consecutive sentence is not supported by the facts of the record and is contrary to law."

{¶41} In an appeal of a felony sentence, "R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under 'division * * * (C)(4) of section 2929.14.'" *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶22.

{¶42} Pursuant to R.C. 2929.14(C)(4), the trial court must find that consecutive service "is necessary to protect the public from future crime or to punish the offender." The trial court must also find that consecutive sentences "are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* The trial court must further find that at least one of the following applies:

{¶43} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶44} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶45} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

12

{¶46} During the sentencing hearing, the court made the following statements on record:

> {¶47} The court finds that consecutive sentences are necessary to protect the public from future crime and to punish this offender, they are not disproportionate to the seriousness of the offender's conduct and the danger he poses to the public. I also find that these acts were committed while awaiting trial in Ashtabula County and while on community control in Geauga County. I find that at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of your conduct and I find that your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by you.

{¶48} The trial court complied with its statutory duty by making the requisite findings under R.C. 2929.14(C)(4). Appellant maintains, however, consecutive sentences were improper because the record does not support the trial court's conclusion that the sentence was necessary to protect the public from dangers he poses to it. He asserts that he has strong family support and this ensures that he would not revert back to his violent behavior. And, he underscores, these are the first felonies of which he has been convicted.

{¶49} Initially, even if he has a sound family support structure, this does not necessarily imply such support will negate the dangers appellant could pose to the public. In light of the circumstances surrounding the crimes to which appellant pleaded, most importantly the sudden and violent nature of appellant's assault on the victim, his then-fiancé, the trial court could reasonably conclude that consecutive terms were necessary to protect the public from future, potentially very violent, criminal activity. Moreover, even though appellant had not been previously convicted of a felony, he was

13

previously convicted of assault on a female victim. We conclude the trial court's findings are sufficiently supported by the record to support consecutive terms of imprisonment.

{¶50} Appellant's third assignment of error lacks merit.

{¶51} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.